**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KELSIE COLBURN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAGNET ABA THERAPY, LLC,<br><br>Defendant. | Case No. 2:26-cv-07616<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kelsie Colburn ("Plaintiff" or "Colburn") brings this action individually and on behalf of all current and former hourly, non-exempt employees who provided applied behavior analysis ("ABA") therapy sessions (collectively, "Plaintiff and the Putative Collective/Class Members"), and were employed by Defendant Magnet ABA Therapy, LLC ("Magnet") anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, unpaid wages, liquidated damages, statutory damages, compensatory and punitive damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq*. (the "Ohio Wage Act"), the Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15 (the "OPPA") (the Ohio Wage Act and the OPPA are collectively referred to as the "Ohio Acts").

## I.
## OVERVIEW

1. This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA, a collective action pursuant to the Ohio Wage Act, and a class

action pursuant to the OPPA under Fed. R. Civ. P. 23, to recover unpaid wages, statutory damages, and other applicable penalties.

2. Plaintiff and the Putative Collective/Class Members are those current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet, anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, who have not been paid for all hours worked or the correct amount of overtime compensation owed to them, in violation of the FLSA and applicable state law.

3. Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half times their regular rates for all hours worked in excess of forty (40) hours per workweek.

4. Plaintiff and the Putative Collective/Class Members also worked less than forty (40) hours in certain workweeks and were not paid for all hours worked in those workweeks.

5. During the relevant time period(s), Magnet knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6. Specifically, Magnet's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to pay Plaintiff and the Putative Collective/Class Members only for the session time shown on their calendars and, with rare exceptions, nothing more (the "Session-Only Pay Policy").

7. Under the Session-Only Pay Policy, Magnet did not (and does not) pay Plaintiff and the Putative Collective/Class Members for preparing their devices before their first session of the day (the "Start-Up Work").

8. Additionally, Magnet did not (and does not) pay Plaintiff and the Putative Collective/Class Members for completing their session notes after their sessions ended (the "Post-Session Documentation").

9. Magnet also did not (and does not) pay Plaintiff and the Putative Collective/Class Members for the time they spent driving directly from one session location to the next during the workday, or for the time they spent waiting between sessions (the "Between-Session Time").

10. Lastly, Magnet did not (and does not) pay Plaintiff and the Putative Collective/Class Members for responding to work-related emails, text messages, and telephone calls, or for completing competency assessments, outside their scheduled sessions (the "Off-Duty Work").

11. The effect of Magnet's practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Magnet has failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and the Ohio Acts.

12. Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

13. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), to recover all unpaid overtime compensation and

other damages owed under the Ohio Wage Act as a collective action pursuant to Ohio Rev. Code Ann. § 4111.10(C), and to recover all statutory damages and other damages owed under the OPPA as a class action pursuant to Fed. R. Civ. P. 23.

14. Plaintiff prays that all similarly situated hourly, non-exempt employees who provided ABA therapy sessions (Putative Collective/Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code Ann. § 4111.10(C).

15. Plaintiff also prays that the Rule 23 class be certified as defined herein, with Plaintiff Colburn designated as the Class Representative of the OPPA Class.

## II.
## THE PARTIES

16. Plaintiff Kelsie Colburn was employed by Magnet in Ohio during the relevant time period(s). Plaintiff Colburn did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

17. The FLSA Collective Members are those current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet, anywhere in the United States, at any time from three (3) years preceding the filing of this Complaint, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Colburn worked and was paid.

18. The Ohio Wage Act Collective Members are those current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet, in Ohio, at any time from two (2) years preceding the filing of this Complaint, through the final disposition

[1] The written consent of Kelsie Colburn is attached hereto as Exhibit "A."

of this matter, who have been subjected to the same illegal pay system under which Plaintiff Colburn worked and was paid.

19. The OPPA Class Members are those current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet, in Ohio, at any time from two (2) years preceding the filing of this Complaint, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Colburn worked and was paid.

20. Defendant Magnet ABA Therapy, LLC is a foreign limited liability company, organized under the laws of the State of Delaware, that is licensed to do business in the State of New York, with its principal office located in Lawrence, New York, and may be served through its registered agent for service of process: **the New York Secretary of State, at the process address Magnet designated: The LLC, P.O. Box 213, Lawrence, New York 11559**.

## III.
## JURISDICTION & VENUE

21. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331, as this is an action arising under 29 U.S.C. §§ 201–19.

22. This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

23. Plaintiff has not entered into an arbitration agreement that would affect the Court's jurisdiction.

24. This Court has general personal jurisdiction over Magnet because the State of New York qualifies as its home state, and Magnet maintains its principal place of business in Lawrence, New York, all of which are located within this District.

25. Venue is proper pursuant to 28 U.S.C. § 1391 in the Eastern District of New York because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred—specifically, Magnet maintains its company headquarters in Lawrence, New York, which is located within this District.

## IV.
## BACKGROUND FACTS

26. Magnet provides ABA therapy to children with autism in their homes, at their schools, and in communities across the United States.[2]

27. To provide its services, Magnet employed (and continues to employ) numerous hourly, non-exempt employees who provide ABA therapy sessions—including Plaintiff and the individuals that make up the Putative Collective/Class Members.

28. Plaintiff and the Putative Collective/Class Members provide one-on-one ABA therapy sessions to the clients Magnet assigns to them and document the therapy they provide in session notes.

29. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work.

30. Importantly, none of the FLSA or the Ohio Wage Act exemptions relieving a covered employer (such as Magnet) of the statutory duty to pay its employees overtime at one and one-half times the regular rate of pay apply to Plaintiff or the Putative Collective/Class Members.

31. Plaintiff Colburn was employed by Magnet as a non-exempt, hourly Registered Behavior Technician from January 2025 until February 2026, and as a non-exempt, hourly Senior Registered Behavior Technician beginning in approximately February 2026.

---

[2] https://www.magnetaba.com/ (last visited November 17, 2026).

32. Plaintiff Colburn provided ABA therapy sessions to Magnet's clients in Northwest Ohio, including in and around Findlay, Ohio, from approximately January 2025 until approximately September 2026.

33. Magnet paid Plaintiff Colburn an hourly rate of $20.00 and, beginning in approximately February 2026, an hourly rate of $21.00.

34. Plaintiff Colburn typically worked Monday through Friday, and some weekends.

35. Magnet typically scheduled Plaintiff Colburn for two (2) sessions each weekday—a morning session from 8:30 a.m. to 3:30 p.m., followed by a second session from 4:00 p.m. to 6:00 p.m. at a location in a different town.

## A. <u>Plaintiff and the Putative Collective/Class Members are Similarly Situated</u>

36. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties, their pay structure, and the policies (and practices) of Magnet resulting in the complained of FLSA and Ohio Acts violations.

37. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their job duties—that is, they all provided ABA therapy sessions to the clients that Magnet assigned to them and documented those sessions in their respective session notes.

38. Plaintiff and the Putative Collective/Class Members are similarly situated with respect to their pay structure—that is, they were all paid on an hourly basis and are (and were) not compensated for all hours worked, including their Start-Up Work, Post-Session Documentation, the Between-Session Time, and the Off-Duty Work.

**B. <u>Unpaid Start-Up Work</u>**

39. Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked as a result of Magnet's policy and practice of requiring them to have their devices ready before their first session of the day began.

40. Specifically, Magnet required Plaintiff Colburn to arrive approximately ten (10) minutes before her first session of the day to prepare the three (3) devices she used during her sessions (the "Start-Up Work").

41. The Start-Up Work took Plaintiff Colburn approximately ten (10) minutes each workday.

42. Because Magnet did not permit Plaintiff Colburn to clock in before the session start time shown on her calendar, she performed the Start-Up Work off-the-clock and without pay.

43. The Start-Up Work was integral and indispensable to the therapy sessions Plaintiff Colburn was employed to provide—specifically, Plaintiff Colburn could not start a session without the devices she was required to use during that session.

44. Magnet knew Plaintiff Colburn performed the Start-Up Work off-the-clock because Magnet required her to arrive early to perform it while prohibiting her from clocking in before her scheduled session time.

45. As a result of Magnet's failure to compensate Plaintiff and the Putative Collective/Class Members for the Start-Up Work, Plaintiff and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**C. Unpaid Post-Session Documentation**

46. Magnet required Plaintiff Colburn to complete a written session note for each session documenting the therapy she provided.

47. Magnet allotted fifteen (15) minutes at the end of Plaintiff Colburn's morning session—from 3:15 p.m. to 3:30 p.m.—for her to complete her session note while still on the clock.

48. Plaintiff Colburn was often unable to use that time for her session note because her client's parents wanted to speak with her or her client needed her attention.

49. Moreover, Plaintiff Colburn's morning session typically lasted seven (7) hours, and she could not complete a session note for a seven (7) hour session in fifteen (15) minutes.

50. Because Magnet required Plaintiff Colburn to clock out when each session ended, she completed her session notes off-the-clock and without pay on most workdays (the "Post-Session Documentation").

51. The Post-Session Documentation took Plaintiff Colburn approximately fifteen (15) to forty-five (45) minutes each time to complete.

52. The Post-Session Documentation is part of the therapy itself—each session note records the therapy provided during that session—and is integral and indispensable to the therapy sessions Plaintiff Colburn was employed to provide.

53. Magnet knew (or should have known) that Plaintiff Colburn performed the Post-Session Documentation off-the-clock because Magnet scheduled her for seven (7) hour sessions, allotted only fifteen (15) minutes for her session notes, required her to clock out when each session ended, and paid her only for her scheduled session time.

54. As a result of Magnet's failure to compensate Plaintiff and the Putative Collective/Class Members for the Post-Session Documentation, Plaintiff and the Putative

Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**D. <u>Unpaid Between-Session Time</u>**

55. Magnet scheduled Plaintiff Colburn's second session of the day to begin at 4:00 p.m.—thirty (30) minutes after her morning session ended at 3:30 p.m.—at a location in a different town.

56. Plaintiff Colburn drove directly from her morning session to her second session on each workday on which she provided both of her scheduled sessions.

57. The drive between Plaintiff Colburn's sessions took approximately thirty-five (35) minutes.

58. Magnet required Plaintiff Colburn to clock out when she left her morning session and did not pay her for the time she spent driving to her second session.

59. Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. *See* 29 C.F.R. § 785.38.

60. Plaintiff and the Putative Collective/Class Members' Between-Session Time occurred within their continuous workday—after their first principal activity of the day and before their last—and must be counted as hours worked. *See* 29 C.F.R. § 790.6(a)–(b).

61. Any time between Plaintiff and the Putative Collective/Class Members' arrival at a session location and the start of the session was too short for them to use effectively for their own purposes.

62. During those periods, Plaintiff and the Putative Collective/Class Members were engaged to wait, and those periods are hours worked. *See* 29 C.F.R. §§ 785.15, 785.16.

63. Plaintiff Colburn's clients sometimes cancelled sessions on the day of the session.

64. Plaintiff Colburn typically did not learn that a client had cancelled a session until she arrived at the session location.

65. If a client cancelled a session after Plaintiff Colburn had completed an earlier session that day and driven to the cancelled session's location, Magnet did not pay her for that travel.

66. Plaintiff Colburn's travel from a completed session to her next scheduled session was travel from job site to job site during her workday and is compensable, regardless of whether the client cancelled. *See* 29 C.F.R. § 785.38.

67. Magnet knew Plaintiff Colburn traveled between her sessions without pay because Magnet scheduled her back-to-back sessions in different towns and required her to clock out between them.

68. As a result of Magnet's failure to compensate Plaintiff and the Putative Collective/Class Members for the Between-Session Time, Plaintiff and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**E. <u>Unpaid Off-Duty Work</u>**

69. Magnet's supervisors regularly contacted Plaintiff Colburn via email, text message, and telephone outside her scheduled sessions, including after hours.

70. Those communications were related to Magnet's clients and Plaintiff Colburn's work with them.

71. Plaintiff Colburn responded to those emails, text messages, and telephone calls off-the-clock and without pay.

72. Plaintiff Colburn also completed competency assessments off-the-clock and without pay.

73. Plaintiff Colburn performed this work (the "Off-Duty Work") almost every workday.

74. The Off-Duty Work took Plaintiff Colburn approximately twenty (20) minutes to one (1) hour each day.

75. Work not requested but suffered or permitted is work time and must be compensated at the proper rate of pay. *See* 29 C.F.R. § 785.11.

76. Magnet knew of the Off-Duty Work because their own supervisors initiated the emails, text messages, and telephone calls to Plaintiff Colburn and received Plaintiff Colburn's responses.

77. As a result of Magnet's failure to compensate Plaintiff and the Putative Collective/Class Members for the Off-Duty Work, Plaintiff and the Putative Collective/Class Members worked straight time hours and overtime hours for which they were not compensated at the rates required by the FLSA and applicable state law.

**F. Magnet Failed to Pay for All Hours Worked and Overtime**

78. In workweeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the Start-Up Work, the Post-Session Documentation, the Between-Session Time, and the Off-Duty Work qualified as unpaid straight time.

79. In workweeks in which Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the Start-Up Work, the Post-Session Documentation, the Between-Session Time, and the Off-Duty Work qualified as unpaid overtime.

80. For example, during the two-week pay period of July 7, 2025 through July 20, 2025, Magnet paid Plaintiff Colburn for seventy-four and one-quarter (74.25) hours of session time (the "Example Workweeks").

81. During the Example Workweeks, Plaintiff Colburn also performed at least fifty (50) minutes of Start-Up Work—approximately ten (10) minutes on each of at least five (5) workdays.

82. During the Example Workweeks, Plaintiff Colburn completed her session notes off-the-clock on at least three (3) workdays, for at least fifteen (15) minutes each day—that is, at least forty-five (45) minutes of Post-Session Documentation.

83. During the Example Workweeks, Plaintiff Colburn performed at least one (1) hour of Off-Duty Work on at least four (4) workdays—that is, at least four (4) hours of Off-Duty Work.

84. Not counting any of her Between-Session Time, Plaintiff Colburn therefore worked at least forty-two and one-half (42.5) hours during the Example Workweeks, but Magnet only paid her for her recorded session time (approximately 37 hours each week).

85. As a result, Magnet failed to pay Plaintiff Colburn for at least two and one-half (2.5) hours of overtime during the Example Workweeks, in violation of the FLSA and the Ohio Wage Act, and for at least three (3) additional hours of straight time, in violation of the OPPA.

86. Plaintiff Colburn worked more than forty (40) hours in other workweeks during her employment as well.

87. Magnet knew or should have known they were not (and are not) compensating Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime compensation in violation of the FLSA and applicable state law.

88. Indeed, Magnet knew they were required to pay Plaintiff and the Putative Collective/Class Members overtime under the FLSA and the Ohio Wage Act but intentionally or recklessly disregarded that legal obligation.

89. Magnet's actions therefore constitute willful violations under the law and were not made in good faith.

90. Magnet knew or should have known their failure to pay the correct amount of straight time and overtime to Plaintiff and the Putative Collective/Class Members would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Collective/Class Members.

91. Because Magnet did not pay Plaintiff and the Putative Collective/Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Magnet's pay policies and practices willfully violated (and continue to violate) the FLSA and the Ohio Acts.

92. Because Magnet did not pay Plaintiff and the Putative Collective/Class Members for all straight time worked, and did not pay those wages within thirty (30) days of their regularly scheduled paydays, Magnet's pay policies and practices violated (and continue to violate) the OPPA.

93. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), all unpaid overtime and other damages owed under the Ohio Wage Act as a collective action pursuant to Ohio Rev. Code Ann. § 4111.10(C), and all statutory damages and other damages owed under the OPPA as a class action pursuant to Fed. R. Civ. P. 23.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Collective Action Alleging FLSA Violations)

### A. FLSA COVERAGE

94. All previous paragraphs are incorporated as though fully set forth herein.

95. The "FLSA Collective" is defined as:

> ALL CURRENT AND FORMER HOURLY, NON-EXEMPT EMPLOYEES WHO PROVIDED ABA THERAPY SESSIONS AND WERE EMPLOYED BY MAGNET ABA THERAPY, LLC, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM THREE (3) YEARS PRECEDING THE FILING OF THIS COMPLAINT, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("FLSA Collective Members").

96. At all material times, Magnet has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

97. At all material times, Magnet has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

98. At all material times, Magnet has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had, and continues to have, employees engaged in the operation of an ABA therapy business and in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

99. Specifically, Magnet employed (and continues to employ) hourly, non-exempt employees to provide ABA therapy sessions to children in their homes, at their schools, and in the community across the United States; purchases electronic devices, software, and therapy materials that have been moved in or produced for commerce; and conducts transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail, and the Internet.

100. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Magnet, these individuals provided services for Magnet that involved interstate commerce for purposes of the FLSA.

101. In performing work for Magnet, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

102. Specifically, Plaintiff and the FLSA Collective Members are (or were) employees who provided ABA therapy services for Magnet's customers throughout the United States. 29 U.S.C. § 203(j).

103. At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

104. The proposed collective of similarly situated employees—that is, the FLSA Collective sought to be certified pursuant to 29 U.S.C. § 216(b)—is defined *supra* ¶ 95.

105. The precise size and identity of the proposed FLSA Collective should be ascertainable from the business records, tax records, and/or employee and personnel records of Magnet.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

106. All previous paragraphs are incorporated as though fully set forth herein.

107. Magnet violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

108. Moreover, Magnet knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

109. Magnet is a sophisticated party and employer, and therefore knew (or should have known) their pay policies and practices were in violation of the FLSA.

110. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Magnet to pay them according to the law.

111. The decision and practice by Magnet to not pay Plaintiff and the FLSA Collective Members the proper amount of overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

112. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

113. All previous paragraphs are incorporated as though fully set forth herein.

114. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action collectively on behalf of Magnet's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

115. Other similarly situated employees have been victimized by Magnet's patterns, practices, and policies, which are in willful violation of the FLSA.

116. The FLSA Collective Members are defined *supra* ¶ 95.

117. Magnet's failure to pay overtime wages for all hours worked in excess of forty (40) in a workweek in an amount equal to one-and-a-half times their regular rate of pay results from generally applicable policies and practices and does not depend on the personal circumstances of the individual FLSA Collective Members.

118. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

119. The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

120. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek in an amount equal to one-and-a-half times their regular rate of pay.

121. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

122. Absent a collective action, many members of the proposed FLSA Collective likely will not obtain redress of their injuries and Magnet will retain the proceeds of its rampant violations.

123. Moreover, individual litigation would be unduly burdensome to the judicial system.

124. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

125. Accordingly, the proposed FLSA Collective of similarly situated plaintiffs should be certified as defined *supra* ¶ 95 and notice should be promptly sent.

## SECOND CAUSE OF ACTION
**(Collective Action Alleging Violation of the Ohio Wage Act)**

### A. OHIO WAGE ACT COVERAGE

126. All previous paragraphs are incorporated as though fully set forth herein.

127. The "Ohio Wage Act Collective" is defined as:

> ALL CURRENT AND FORMER HOURLY, NON-EXEMPT EMPLOYEES WHO PROVIDED ABA THERAPY SESSIONS AND WERE EMPLOYED BY MAGNET ABA THERAPY, LLC, IN OHIO, AT ANY TIME FROM TWO (2) YEARS PRECEDING THE FILING OF THIS COMPLAINT, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("Ohio Wage Act Collective Members").

128. At all material times, Magnet has been an "employer" as defined by the Ohio Wage Act. *See* Ohio Rev. Code Ann. §§ 4111.03(D)(2), 4111.14(B)(2).

129. At all material times, Plaintiff Colburn and the Ohio Wage Act Collective Members were Magnet's "employees" as defined within the Ohio Wage Act and were employed in the State of Ohio. *See* Ohio Rev. Code Ann. §§ 4111.03(D)(3), 4111.14(B)(1).

130. Magnet—the "employer"—is not exempt from paying overtime under the Ohio Wage Act. Plaintiff Colburn and the Ohio Wage Act Collective Members were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. *See* Ohio Rev. Code Ann. § 4111.03(A); 29 C.F.R. §§ 541 *et seq.*

## B. FAILURE TO PAY OVERTIME WAGES UNDER THE OHIO WAGE ACT

131. All previous paragraphs are incorporated as though fully set forth herein.

132. The Ohio Wage Act requires employers, like Magnet, to pay employees, including Plaintiff Colburn and the Ohio Wage Act Collective Members, overtime wages at a rate not less than one and one-half times their regular rates of pay for all hours worked over forty (40) in a workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act. *See* Ohio Rev. Code Ann. § 4111.03(A); 29 U.S.C. § 207(a)(1).

133. Magnet failed to pay Plaintiff Colburn and the Ohio Wage Act Collective Members overtime wages at one and one-half times their regular rates of pay for all hours worked over forty (40) in a workweek by failing to count and pay the Start-Up Work, the Post-Session Documentation, the Between-Session Time, and the Off-Duty Work.

134. The Start-Up Work, the Post-Session Documentation, the Between-Session Time, and the Off-Duty Work are compensable under the Ohio Wage Act because that time was integral and indispensable to the principal activities of Plaintiff Colburn and the Ohio Wage Act Collective Members, was performed at the specific direction of Magnet, was performed pursuant to Magnet's established policies and practices, and therefore falls outside any exclusion in Ohio Rev. Code Ann. § 4111.031(A). *See* Ohio Rev. Code Ann. § 4111.031(B).

135. In violating the Ohio Wage Act, Magnet acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

136. As a direct and proximate result of Magnet's conduct, Plaintiff Colburn and the Ohio Wage Act Collective Members are entitled to unpaid overtime wages, interest, reasonable

attorneys' fees, and all other remedies available pursuant to the Ohio Wage Act. *See* Ohio Rev. Code Ann. § 4111.10(A).

## C. OHIO WAGE ACT COLLECTIVE ACTION ALLEGATIONS

137. All previous paragraphs are incorporated as though fully set forth herein.

138. Plaintiff Colburn brings this Count as an opt-in collective action under Ohio Rev. Code Ann. § 4111.10(C) on behalf of herself and all similarly situated current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet in Ohio during the relevant two-year period and who file their written consent to join this action.

139. The Ohio Wage Act Collective is defined *supra* ¶ 127.

140. Plaintiff Colburn and the Ohio Wage Act Collective Members are "similarly situated" for purposes of Ohio Rev. Code Ann. § 4111.10(C) because they performed the same job duties, were subjected to the same illegal pay practices, and were denied overtime wages under the same companywide policies.

141. Plaintiff Colburn requests that this Court issue court-supervised notice pursuant to Ohio Rev. Code Ann. § 4111.10(C) to all members of the Ohio Wage Act Collective informing them of their right to opt in to this action.

142. The precise size and identity of the Ohio Wage Act Collective should be ascertainable from Magnet's business records, payroll records, and personnel records.

143. Accordingly, court-supervised notice should be sent to the Ohio Wage Act Collective as defined *supra* ¶ 127.

## THIRD CAUSE OF ACTION
**(Class Action Alleging Violation of the OPPA)**

## A. OPPA COVERAGE

144. All previous paragraphs are incorporated as though fully set forth herein.

145. The "OPPA Class" is defined as:

> ALL CURRENT AND FORMER HOURLY, NON-EXEMPT EMPLOYEES WHO PROVIDED ABA THERAPY SESSIONS AND WERE EMPLOYED BY MAGNET ABA THERAPY, LLC, IN OHIO, AT ANY TIME FROM TWO (2) YEARS PRECEDING THE FILING OF THIS COMPLAINT, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("OPPA Class Members").

146. At all material times relevant to this Complaint, Magnet was the "employer" of Plaintiff Colburn and the OPPA Class Members and was required to comply with the OPPA's provisions. *See* Ohio Rev. Code Ann. § 4113.15.

## B. FAILURE TO PROMPTLY PAY WAGES UNDER THE OPPA

147. All previous paragraphs are incorporated as though fully set forth herein.

148. The OPPA provides that employers shall pay covered employees all wages, including overtime, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month for wages earned during the preceding calendar month. *See* Ohio Rev. Code Ann. § 4113.15(A).

149. At all material times, Magnet has refused to pay Plaintiff Colburn and the OPPA Class Members all owed wages, including overtime wages at one and one-half times their regular rates of pay and wages for their Start-Up Work, Post-Session Documentation, Between-Session Time, and Off-Duty Work, within thirty (30) days of performing the work. *See* Ohio Rev. Code Ann. § 4113.15(B).

150. The wages of Plaintiff Colburn and the OPPA Class Members remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

151. No contest, court order, or dispute of any wage claim, including the assertion of a counterclaim, exists accounting for Magnet's nonpayment of the wages owed to Plaintiff Colburn and the OPPA Class Members.

152. Magnet's violations of the OPPA have been of a willful, intentional, or bad faith nature or have otherwise exhibited a reckless disregard of the OPPA's provisions.

153. As a direct and proximate result of Magnet's conduct, Plaintiff Colburn and the OPPA Class Members are entitled to the sum of six percent (6%) of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty (30) days, whichever is greater, plus pre- and post-judgment interest, reasonable attorneys' fees, and all other remedies available under the OPPA. *See* Ohio Rev. Code Ann. § 4113.15(B).

154. Magnet is in possession and control of necessary documents and information from which Plaintiff Colburn would be able to precisely calculate damages.

155. The proposed class of putative class members sought to be certified pursuant to the OPPA is defined *supra* ¶ 145.

156. The precise size and identity of the proposed OPPA Class should be ascertainable from the business records, tax records, and/or employee and personnel records of Magnet.

## C. <u>OPPA CLASS ALLEGATIONS</u>

157. All previous paragraphs are incorporated as though fully set forth herein.

158. Plaintiff Colburn and the OPPA Class Members bring their claims under the OPPA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals employed by Magnet in Ohio since two (2) years preceding the filing of this Complaint.

159. Class action treatment of the OPPA Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

160. **Numerosity**: The OPPA Class is so numerous that joinder of all members is impracticable. On information and belief, there are dozens, if not hundreds, of current and former hourly, non-exempt employees who provided ABA therapy sessions and were employed by Magnet in the State of Ohio during the relevant time period and were subjected to the same illegal pay practices.

161. **Commonality**: Plaintiff Colburn's claims share common questions of law and fact with the claims of the OPPA Class Members—specifically, whether Magnet's Session-Only Pay Policy violated the OPPA.

162. **Typicality**: Plaintiff Colburn's claims are typical of the claims of the OPPA Class Members because Plaintiff Colburn and the OPPA Class Members worked the same or similar job duties, were paid under the same compensation structure, and were not paid for all hours worked pursuant to the same uniform practices.

163. **Adequacy**: Plaintiff Colburn and her counsel will fairly and adequately represent the OPPA Class Members and their interests, and Plaintiff Colburn has no interests that are antagonistic to or in conflict with the interests of the OPPA Class Members.

164. **Predominance and Superiority**: Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual OPPA Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation because, among other things, the OPPA Class Members lack the financial resources or incentive to prosecute individual actions, and a class action will conserve judicial resources and ensure consistent adjudication.

165. Accordingly, the OPPA Class should be certified as defined *supra* ¶ 145.

## VI.
## RELIEF SOUGHT

WHEREFORE, Plaintiff, on behalf of herself and the Putative Collective/Class Members, respectfully prays for judgment against Magnet as follows:

A. For an Order certifying the FLSA Collective as defined *supra* ¶ 95;

B. For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

C. For an Order pursuant to § 16(b) of the FLSA finding Magnet liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

D. For an Order authorizing court-supervised notice pursuant to Ohio Rev. Code Ann. § 4111.10(C) to the Ohio Wage Act Collective as defined *supra* ¶ 127;

E. For an Order pursuant to the Ohio Wage Act awarding Plaintiff Colburn and the Ohio Wage Act Collective Members unpaid overtime wages, interest, and all other damages allowed by law;

F. For an Order certifying the OPPA Class as defined *supra* ¶ 145 and designating Plaintiff Colburn as Representative of the OPPA Class;

G. For an Order pursuant to the OPPA awarding Plaintiff Colburn and the OPPA Class Members the sum of six percent (6%) of the total unpaid wages or $200.00 for each instance of failure to pay wages owed within thirty (30) days, whichever is greater, and all other damages allowed by law;

H. For an Order awarding the costs of this action;

I. For an Order awarding attorneys' fees pursuant to 29 U.S.C. § 216(b) and Ohio Rev. Code Ann. §§ 4111.10(A) and 4113.15(B);

J. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

K. For an Order awarding Plaintiff Colburn a service award as permitted by law;

L. For an Order compelling the accounting of the books and records of Magnet, at Magnet's expense; and

M. For an Order granting such other and further relief as may be necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Putative Collective/Class Members, hereby demand a trial by jury on all issues of fact and damages.

Dated: November 24, 2026

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
**Innessa M. Huot**
ihuot@faruqilaw.com
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**Anderson Alexander, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander** (*Pro Hac Vice* Anticipated)
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** (*Pro Hac Vice* Anticipated)

Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy** (*Pro Hac Vice* Anticipated)
Texas Bar No. 24071993
lauren@a2xlaw.com
**Carter T. Hastings** (*Pro Hac Vice* Anticipated)
Texas Bar No. 24101879
carter@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Counsel for Plaintiff and the Putative Collective/Class Members*